## Case No. 15,051.

### UNITED STATES v. EMERSON.

[6 McLean, 406.] [1]

Circuit Court, D. Indiana. May Term, 1855.

EMBEZZLEMENT FROM MAIL—EVIDENCE—WITNESSES —CHARACTER.

1. On a charge for stealing letters out of the mail by a post master or other person, it is important to have as witnesses the post masters through whose offices the letters passed or were distributed.

2. When such witnesses are not called, although there may be proof of the mailing of the letters, and that they were never received, it is not sufficient for the conviction of any post master on the route.

3. If a witness swear positively as to the commission of the offence under improbable circumstances, whose character is bad, it will have little weight with the jury.

4. And this is especially so where the accused shows a good character. Under doubtful circumstances of guilt, good character will lead to an acquittal of the defendant.

[This was an indictment against John M. Emerson.]

The District Attorney, for the United States.

Morrison & Walpole, for defendant.

OPINION OF THE COURT. This is an indictment which charges the defendant with embezzling various letters, which contained articles of value, while acting as post master at Hamilton, in Steuben county, Indiana. E. B. Mott, a witness, states, that on or about the 1st of January, 1853, he mailed a letter at the office of defendant, directed to James Akright, New London, Huron County, O., which contained two certificates of deposit, dated the 3d of December, 1852, given by the Tompkins County Bank, New York, in favor of James A. Gibbons, assigned to Akright. The package was directed to the distributing office at Toledo. S. W. Spratt stated that three letters or packets were mailed about the same time, one of which contained two certificates of deposit, each for fifty dollars; the other two packets contained a deed and other papers, all of which by their direction were to pass through the Toledo post office. The first letter was mailed the same evening, &c. Mr. Brown, the post office agent, in a short time after the loss of the letters was suspected, examined the distributing post office at Toledo, and found that no such letters as described had passed through that office, at or near the time that they should have been distributed at that office. Dugan, a witness, was called by the prosecution, who swore that on the 1st of January, 1853, he called at the post office in Hamilton, about ten o'clock at night, knocked at the door, and no one answering, he went across the street on some business. In

a short time he returned, and seeing a light in the window of the post office, he crossed over the fence and approached the window, where he saw the post master sitting near the window engaged in opening letters; and he saw him take money and other articles out of the letters thus opened, which he put in his pockets, and one or two of the letters, after the contents had been taken out, he laid upon the window, so that the witness could see the directions on the letters, and he says the directions were to the same persons as sworn to have been mailed on the 1st of January. One he specially observed was directed to James Akright. He observed that one of the letters opened contained a deed, or what appeared to be a deed, or a patent for land. After the defendant had completed his work, he stepped into an adjoining room, opened the door of a stove and threw the letters into it. Dugan, by a large number of respectable witnesses, was proved to have a bad character, and every one stated that he was not worthy of credit under oath. The defendant's character, was proved to be good. He was a physician of respectable standing in society, and he was evidently a man of intelligence. It was also proved that Dugan was once arrested for perjury, at the instance of the defendant, on which account he was hostile to the defendant, although that difficulty had been settled between them.

The court charged the jury that the evidence, without the statements of Dugan, did not authorize a conviction. That the letters were mailed at the office of the defendant at the time stated, there could be no reasonable doubt. The witnesses were highly respectable, and nothing has been stated to their discredit. But from the office of the defendant to the distributing office at Toledo, a distance of more than fifty miles, there are several post offices where the mail was opened, but none of the post masters have been called as witnesses. The examination of the Toledo office where the mail is distributed, is satisfactory to show that no such mail as should have been forwarded from the Hamilton office was distributed at Toledo. But if the letters were abstracted at Toledo, where they passed through the hands of the post master or his clerks, and if they were carried in the mail to that point, the latter have not been called as witnesses. Nor is there any evidence to show that the letters deposited in the Hamilton office have not been received. These defects in the evidence are fatal to the success of the prosecution, unless the jury shall believe the evidence of Dugan. The credibility of witnesses must be considered and judged of by the jury.

In the first place, this witness is discredited by his neighbors. Many of them have been examined, and they agree in saying Dugan's character is bad, and that they would not believe him under oath. There is no better test of the character of a witness

than the opinion of his neighbors. Every man has a character where he is best known, —where his daily walk and conversation are observed and spoken of. Local prejudices or excitements may sometimes do injustice to an individual. But this is generally temporary. So that upon the whole, there is no criterion so safe, in determining as to the truth of a witness, as the opinion of his neighbors. The relation of the witness in regard to the acts of the defendant, which he observed through a window at a late hour of the night, cannot be said to have been impossible; but they were very extraordinary. They were of a character to create strong doubts of their truth, unless they proceeded from a credible person. It appears that the witness and the defendant had been at enmity. This not unfrequently affords a motive for revenge, where injuries supposed or real had been inflicted on the witness. Of these matters, gentlemen, you are to judge and determine. The defendant has proved a good character. He is a professional man, and stood well with his neighbors. He has left the neighborhood, but he seems to have left few enemies behind him. Indeed, from the evidence, no witness speaks to his prejudice, except the witness, Dugan. Character, gentlemen, under all circumstances, is the best earthly inheritance. It is a shield to the innocent when unjustly accused. And in this case you will give weight to it, in connection with the other facts of the case.

Verdict "Not guilty."